Shaun Robinson
6319 Blue Lakes Ct.
Reno, NV 89523
T: (775) 336-7761
Sarobinson426@gmail.com
In Pro Persona

FILED ✓
ENTERED
_____ RECEIVED
_____ SERVED ON
COUNSEL/PARTIES OF RECORD

**JUL 1 6 2015**

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Shaun Robinson,

    Plaintiff,

    vs.

NEVADA SYSTEM OF HIGHER
EDUCATION; UNIVERSITY OF NEVADA,
RENO; SALLI J. VANNUCCI and individual,
KIM BAXTER and individual, PATSY
RUCHALA and individual, GEORGE
RODWAY and individual, DR. NORA
CONSTANTINO, CATHY BUTLER an
individual, DEBORAH ARNOW an
individual, CHAPEL McKINNON an
individual.

    Defendants.

Case No. 3:15-cv-00169-MMD-VPC

## SECOND AMENDED COMPLAINT

This Complaint against Defendants, and each of them, complains and avers that the civil

rights of Plaintiff, Shaun Allen Robinson, through the actions of the below named Defendants,

were violated when he was dismissed from a professional degree program offered by the

University of Nevada, Reno within the Nevada System of Higher Education.

## JURSIDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant 28 USC §1331;

1

2. This Court has subject matter jurisdiction pursuant 42 USC 1981;

3. This Court has subject matter jurisdiction pursuant 28 USC §1343;

4. This Court has subject matter jurisdiction pursuant 42 USC §1985(3);

5. This Court has subject matter jurisdiction pursuant 42 USC §1983;

6. This Court has subject matter jurisdiction of USCA Constitutional Amendment 14. The amount in controversy will exceed $75,000 for individual or collective claims below;

7. Defendants are sued under USCA Const Amendment 14. *See Board of Curators of University of Missouri v  Horowitz*, 435 U.S. 78 (1978); *Regents of University of Michigan v Ewing*, 474 U.S  214 (1985), *Larsen*, 2012 U.S. Dist. LEXIS 30013 (D Nev  2012).

8. There is discrimination present regarding actions against Shaun Robinson by Defendant(s).

9  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because substantial portion, if not all, of the events and omissions giving rise to this lawsuit occurred in this District, and the Court has personal jurisdiction over each of the parties as alleged throughout this Complaint.

## PARTIES

10. Plaintiff, Shaun Allen Robinson (Herein after referred to as "Plaintiff"), was a male nursing student accepted into the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education and begun in this education on January 21st, 2013 and was scheduled to graduate in May 2014. Plaintiff was dismissed from the Orvis School of Nursing on June 3rd, 2013.

11. Plaintiff at all relevant times up to and including June 3rd, 2013 was a resident of and domiciliary of the State of Nevada, County of Washoe, residing at 6319 Blue Lakes Ct. Reno,

NV 89523 since before January, 2013 and during the Spring 2013 semester at the University of Nevada, Reno between January 2013 and June, 2013. Plaintiff applied to the Orvis School of Nursing in August 2012 and was duly admitted to the Orvis School of Nursing (*See* ¶15, 48 - 54) in November 2012 for the Spring 2013 semester for the dates of January 21st 2013 and scheduled graduation in May, 20th, 2013.

12. Defendant Nevada System of Higher Education and all institutions thereto are recipients of Federal Financial Assistance. *See* 34 CFR §100(Appendix A); 34 CFR §106.2(g)(1)(ii); Federal Register.

13. Defendant Nevada System of Higher Education (Herein referred to as "NSHE" or proper name) is founded under the Nevada Constitution Article 11§4, 7 and 8, is a political subdivision of the State of Nevada, and includes the University of Nevada, Reno and Truckee Meadows Community College where all of the below people worked and interacted as material hereto. Nevada System of Higher Education Handbook which contains both the Board of Regents Bylaws as well as the Nevada System of Higher Education Code collectively referred to as 'NSHE Bylaws' or 'NSHE Code'.

14. Defendant University of Nevada, Reno ("UNR") is an institution which belongs to the Nevada System of Higher Education pursuant to Nevada Constitution Article 11§4, 7, 8 and produces, under the laws of the State of Nevada, an Administrative Manual which serves as Bylaws pursuant the Nevada System of Higher Education Code Title 2 Chapter 1 §1.3.4 (*cited as* 2 NSHE Chapter 1 §1.3.4) and is consistent with and superseded by the and the Nevada System of Higher Education Handbook. The University of Nevada, Reno is inseparable from NSHE and is subject to the Board of Regents (Nev. Const. Article 11§8) and Nevada laws.

///

15. Defendant Orvis School of Nursing ("OSN"), a competitive and selective professional degree program, is a unit of the Division of Health Sciences at the University of Nevada, Reno within the Nevada System of Higher Education and produces its own Bylaws and Handbook namely the Orvis School of Nursing Faculty Manual. (*See* 2 NSHE Bylaws Chapter 1 §1 3.5) and OSN Handbook which is developed in congruence with and superseded by the University of Nevada, Reno Administrative Manual and the Nevada System of Higher Education Handbook, and under Nevada law. The Orvis School of Nursing is inseparable from the University of Nevada, Reno or the Nevada System of Education.

16. Salli J. Vannucci resides in Nevada. She is an assistant professor at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education. Salli J. Vannucci was Plaintiff's 'NURS 318 clinical class' professor from January 21st, 2013 to May 15th, 2013 and acted in an individual capacity

17. Patsy Ruchala resides in Nevada and is the administrator, director, and a professor at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) as well as on the Education Advisement Committee for the Nevada Board of Nursing and acted in an individual capacity

18. George Rodway resides in Nevada. He is an assistant professor at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

19. Cathy Butler resides in Nevada. She served on Plaintiff's 'Grade Appeal Committee' and is the Orvis School of Nursing Committee Chair and an assistant professor at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

4

20. Deborah Arnow resides in Nevada. She served on Plaintiff's 'Grade Appeal Committee' and is the Orvis School of Nursing Committee Chair and is an assistant professor at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

21. McKinnon Chappell resides in Nevada. He was an Orvis School of Nursing student whom served on Plaintiff's 'Grade Appeal Committee' and is currently a Registered Nurse at Renown Regional Medical Center 1155 Mill St. Reno. NV 89502.

22. Dr. Nora Constantino resides in Nevada. She served on Plaintiff's 'Grade Appeal Committee' and is an associate professor at the School of Community Health Sciences with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

23. The 'Grade Appeal Committee' was composed of four members Cathy Butler, Assistant Professor, Orvis School of Nursing Committee Chair; Deborah Arnow, Assistant Professor, OSN; McKinnon Chappell, Orvis School of Nursing Level III Student; Dr. Nora Constantino, Associate Professor, School of Community Health Sciences at the University of Nevada, Reno within the Nevada System of Higher Education. They were selected by the Orvis School of Nursing Director, Patsy Ruchala.

24. The 'Grade Appeal Committee' is designed to address a singular class and not to address the progress of student(s), in the Orvis School of Nursing Program. (*See* ¶15, 76).

25. Thomas Schwenk resides in Nevada. He is the Vice President of the University of Nevada, Reno Division of Health Sciences and Dean of Health Sciences and is the Dean of the Orvis School of Nursing and the School of Medicine at the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

26. Mary Anne Lambert resides in Nevada. She was, at all relevant times, the Second Degree Advisor at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) as well as on the Educational Committee with the Nevada Board of Nursing and acted in an individual capacity.

27. Kim Baxter resides in Nevada. She is the Second Degree Advisor, an Assistant Professor, and allegedly the Associate Director of Undergraduate Programs at the Orvis School of Nursing with the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

28. Joe Cline resides in Nevada. He is the Vice Provost of Undergraduate Education at the University of Nevada, Reno within the Nevada System of Higher Education (*See* ¶13, 14, 15) and acted in an individual capacity.

## NATURE OF THE CASE AND FACTUAL ALLEGATIONS

### A. Title IX, 20 USC §1681 et seq. Violation

29. This Second Amended Complaint alleges Title IX violations. Title IX violations are held to similar standards to those of Title VII which the Court has often looked to for guidance on these matters. *See McDonnell Douglas Corp. v  Green*, 411 US 792, 802 S.Ct. (1973) (establishing the 4 prima facie qualifications of discrimination cases); *See also Baldwin v University of Texas Med. Branch at Galveston*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996), aff'd, 122 F 3d 1066 (5 th Cir. 1997) (Applying *McDonnell Id.* burden-shifting framework to cases of intentional discrimination.)

30. First, Plaintiff is part of a protected class. *See* ¶10 and ¶48 - 63. Plaintiff was a male nursing student at the Orvis School of Nursing accepted on November 8th, 2012 and dismissed on June 3rd, 2013. He is one of the few male nursing students accepted, and the one male of eight

students in his NURS 318: 'Clinical Class'. Plaintiff was targeted for discrimination based on his sex and was treated differently as well as denied and excluded the benefits of participation in the education at the Orvis School of Nursing. Plaintiff does belong to the class Title IX, 20 USC §1681 et seq. was designed to protect. *See* Title IX, 20 USC §1681(a).

31  The Orvis School of Nursing with UNR is a recipient of federal financial assistance *See* 34 CFR §100(Appendix A); 34 CFR §106.2(g)(1)(ii): Federal Register; UNR is also a Federal Land Grant Institution from the Morrill Land-Grant College Act of 1862.

32. Secondly, OSN with UNR maintains a 'Readmission' policy which allows for students to be readmitted on a space available basis. When Plaintiff was dismissed another person was allowed into the program to the detriment of Plaintiff.

33. Third, Plaintiff was a male nursing student fully vested, competent, eligible, and qualified with an 'A', 'A-', 'B+', 'B+', and a 78% in his clinical class amounting to a 'C+' at UNR which meets the qualifications to continue in the Orvis School of Nursing program  (*See* ¶65, 66, 67, 68, 69.) Plaintiff is also eligible for the benefits of the policies governing the Orvis School of Nursing. Plaintiff was denied participation and benefits of well-established deliberated and written policy i.e. the 'Admissions, Progressions, and Student Affairs' committee and the UNR Administrative Manual safeguards and 'Readmission Policies.' Plaintiff is even further denied the benefits of mandates of the State NAC 632.680(3, 4) "[t]he administrator of a program of nursing shall establish a policy for the resolution of complaints and disputes concerning students" and required to be in writing by the Orvis School of Nursing. Plaintiff is denied not only the education at the Orvis School of Nursing but all the safeguards thereto.

34. Fourth. as stated above the Orvis School of Nursing maintains a 'Readmission' policy based on space available  Plaintiff was discriminated against and dismissed to create this 'space'

for another student.  Plaintiff meets the 4 prima facie qualifications stated in *McDonnell* and

"[t]he burden then must shift to the [University] to articulate some legitimate, nondiscriminatory

reason for [Plaintiff's] rejection " *Mcdonnell*, 411 US 792, at 802; *See also Baldwin v. University*

*of Texas Med  Branch at Galveston*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996) ("Also If the

plaintiff proves her *prima facie* case, a presumption of discrimination arises.")

**B. Continued Property Interest and Introduction to this Matter**

      35. Plaintiff has a continued state created property interest in his continued studies

without interference and with due process. Plaintiff was a duly accepted professional nursing

student whom took the required pre-requisite classes to apply to the professional nursing degree

program, the Bachelors of Science in Nursing ("BSN") program, at the Orvis School of Nursing

with the University of Nevada, Reno within the Nevada System of Higher Education. Plaintiff

was considered amongst approximately 96 other applicants by the Orvis School of Nursing and

subsequently accepted into the Orvis School of Nursing program and started matriculating into

the Orvis School of Nursing in November 2012 beginning classes in January 2013 with 48 other

students in this cohort, which will be referred to as the 'Spring 2013 Cohort'. The 'Spring 2013

Cohort' graduated in May 2014  Plaintiff was wrongfully dismissed on June 4th, 2013. He

attended an orientation on December 12th, 2012 where he received the Orvis School of Nursing

Handbook 2012, that is, the proper handbook that applies to his time at the Orvis School of

Nursing. On January 22nd, 2013 he received his syllabi and schedules for his classes as well as

grading materials for his classes. Later meetings during his time at the Orvis School of Nursing

he received other pertinent materials such as the Nevada 'Nurse Practice Act' (*See* NRS 632 &

NAC 632). Plaintiff was subject to harassment in the form of intimidation as well as outright and

outrageous falsehoods during his time at the Orvis School of Nursing. The Plaintiff's time at the

Orvis School of Nursing with UNR was an aberration and the Defendants' determination to dismiss Plaintiff was arbitrary and capricious, absent due process, absent equal protection, an abuse of discretion, lacked scrutiny, made in bad faith, as well as decided upon an irrational and fact-less basis.

**C. Policy Background of the Nevada System of Higher Education, University of Nevada, Reno and the Orvis School of Nursing**

36      The Nevada Constitution States, "… [t]he Board of Regents shall … immediately organize and maintain the [Departments] in such manner as to make it most effective and useful…" The Orvis School of Nursing is inseparable and an integral part of the Nevada System of Higher Education organized underneath the Division of Health Sciences with the University of Nevada, Reno an institution within NSHE. Both, the University of Nevada, Reno and the Orvis School of Nursing are governed by the NSHE Board of Regents whom ultimately, "… control and manage the affairs of the University and the funds of the same under such regulations as may be provided by law. But the Legislature shall at its regular session next preceding the expiration of the term of office of said Board of Regents provide for the election of a new Board of Regents and define their duties." (Nev. Const. Article 11§7). The Orvis School of Nursing, the University of Nevada, Reno and the NSHE Board of Regents fail to create, prepare, plan, execute, and otherwise act on policy which directly resulted in Plaintiff's damages.

37.      The Orvis School of Nursing is a State endeavor created for the benefit of the State.

38      The Nevada Administrative Code Chapter 632 ("NAC 632") and the Nevada Revised Statutes Chapter 632 ("NRS 632") are collectively called the 'Nurse Practice Act' and necessarily regulate both the establishment of nursing schools in Nevada as well as the 'day to

day' operations of these nursing schools, such as, the Orvis School of Nursing. Defendant(s) are bound by these laws.

39.    NAC 632.680(3, 4), "[3] All policies concerning students must be in writing and must include, without limitation, processes for revision of the policies and requirements for providing notice of any revisions to the students ... [4] The administrator of a program of nursing shall establish a policy for the resolution of complaints and disputes concerning students." Defendant(s) are bound by these codes.

40    Nevada Revised Statutes 396 ("NRS 396") are the laws pertinent to the Nevada System of Higher Education. Defendant(s) are bound by these laws.

41.    The political subdivision, the Nevada System of Higher Education, has rule-making authority via a Board of Regents and pursuant Nev. Const. Article 11§4, §7, 1 NSHE Code Article III§1, 3, 4. The Nevada System of Higher Education produces its own rules which serve as it's own governance. These rules are found in NSHE's handbook the Nevada System of Higher Education Handbook (Herein referred to as "NSHE Handbook"), which contains both the Nevada System of Higher Education's Board of Regent's Bylaws, Title 1, as well as the Nevada System of Higher Education Code, Title 2 et seq., collectively referred to as 'NSHE Bylaws' or 'NSHE Code' and is published online. This includes procedures and requirements for any classes taken at institutions within the Nevada System of Higher Education including Plaintiff's 'Level I' classes at the Orvis School of Nursing. Defendant(s) is bound by these laws.

42    NSHE Handbook provides for several standing committees including the Academic and Student Affairs Committee ("ASA") which have not been utilized by Defendant and are pertinent to Plaintiff's time at the Orvis School of Nursing with the University of Nevada, Reno. ASA is meant to maintain academic standards and the quality of education at

UNR   The NSHE Code also provides for several other pertinent committees which are not utilized.

43.   Through the 'NSHE Code' the Orvis School of Nursing Bylaws provides in their Faculty Manual an 'Admissions, Progressions, and Student Affairs Committee' (Herein "APSA") which is to be utilized when students are dismissed. Defendants never employed, utilized, or recommended any decision to an APSA Committee in Plaintiff's dismissal on June 4th, 2013.

44.   The University of Nevada, Reno produces the 'University of Nevada, Reno Administrative Manual' which serves as its Bylaws (*See* 2 NSHE Code Chapter 1 §1.3.4). Defendant(s) are bound to these bylaws.

45   The Orvis School of Nursing also produces a handbook, namely the Orvis School of Nursing Handbook 2012, which binds Orvis School of Nursing professors and Orvis School of Nursing students to it's rules, procedures, class requirements, ethics policies, and safeguards to teach and guide accepted nursing students to become successful, working, registered nurses.

46.   On or Around July 7th, 2013, after Plaintiff's dismissal, Defendant revised and omitted the Orvis School of Nursing Handbook 2012 regarding the provisions and safeguards that apply to relevant students, such as, the 'Professional Ethics and Academic Policy'.

47.   The Orvis School of Nursing progresses students in 'blocks' of classes that must be taken together. The 'blocks' of classes are called 'Levels' and students proceed from 'Level I' to 'Level II', to 'Level III', and finally to 'Level IV' at which time they are considered complete in their studies.

**D. Plaintiff's Application and Acceptance into the Orvis School of Nursing**

48. In August 2012 Plaintiff applied with a prerequisite 3.83 'Grade Point Average' to the Orvis School of Nursing by successfully passing the required twenty two pre-requisite courses

11

required to apply to the Orvis School of Nursing a competitive and selective professional degree program offered at the University of Nevada, Reno within NSHE. Plaintiff was fully vested, eligible, competent, and maintained passing grades which ordinarily would allow Plaintiff to progress in the Orvis School of Nursing program an A, A-, B+, B+, and C+.

49. On September 14th, 2012 Plaintiff was considered amongst the some 96 applicants for the Spring 2013 semester and was offered the required two part interview at the Orvis School of Nursing.

50. Interviews were held on September 28th, 2012 and September 29th, 2012 and were composed of two parts, that is, a (1) oral 'Question and Answer' portion and (2) a written 'Essay' portion.

51. On September 28th, 2012 Plaintiff participated in the required two part interview at the Orvis School Nursing.

52. On November 8th, 2012 Plaintiff accepted Defendant's offer of a seat in their professional degree program along with 48 other students in this cohort, the Spring 2013 cohort.

53. On December 12th, 2012 Plaintiff attended the mandatory orientation where Plaintiff was informed of the Orvis School of Nursing Handbook 2012 and all of the requirements of the classes including the procedures of the 'Professional Ethics and Academic Policy'.

54. In December 2012 Plaintiff enrolled in classes exclusive to students accepted into the Orvis School of Nursing program in; NURS 318: 'Clinical Class', NURS 317: 'Care of the Individuals and Families', NURS 301: 'Assessment Theory', NURS 301L: 'Assessment Lab', and NURS 331: 'Pathophysiology'.

///

///

**E. Plaintiff's Time at the Orvis School of Nursing Until Midterms; March 15th, 2013**

55. From January 21st, 2013 to May 20th, 2013 Plaintiff was a professional nursing student, enrolled in the nursing major, participating, and progressing towards a professional degree at the Orvis School of Nursing and continued in the program as a 'Level II' student in the classes NURS 353, NURS 332, NURS 343, NURS 346, and NURS 418 until June 3rd 2013.

56. The week of January 21st, 2013 to January 25th, 2013 Plaintiff attended the first week of the Orvis School of Nursing and received his class materials including the Orvis School of Nursing Handbook 2012, syllabi and schedules for his 'Level I' classes (*See* ¶54).

57. The first 4 weeks of the Orvis School of Nursing program are considered 'Front Loading'. 'Front Loading' is described in the NURS 318: Schedule: "We will spend the first four weeks of clinical in the classroom/laboratory setting learning the basic skills you will need before you begin patient care. All frontloading days are scheduled from 8:00 AM - 4:00 PM. Please be sure that your personal, family, and employment schedules accommodate these timeframes. While we MAY finish early on some days, please do not make plans that will require you to be anywhere before 4:00 PM!" Frontloading is designed to help students get accommodated to the nursing school curriculum and nursing profession.

58. From February 21st, 2013 to April 26th, 2013 Plaintiff was at his clinical site on time and prepared every Thursday and Friday in the hospital Renown Regional Medical Center on 1155 Mill St. Reno, NV 89502 on the 3rd, Floor of Medical Telemetry unit managed by Ryan Glazier. This unit is now in the Sierra Tower 5th, Floor at Renown Hospital.

59. From January 3rd, 2013 to June 3rd, 2013 Plaintiff was singled-out and experienced multiple harassing events against him including multiple accusations specifically by Salli J. Vannucci his NURS 318: 'Clinical Class' professor. Falsely she accused Plaintiff of not turning

assignments that he turned in, missing skills rotations which he did not miss, not responding to unilaterally scheduled meetings which he did respond to, not shaving his face when he came in well groomed and prepared, wearing dirty uniform when he came in freshly cleaned; dried, and ironed (with pleats) uniform, lying which he did not do and for which Defendant cannot present any material evidence of, and multiple false accusations of Plaintiff turning in "wrong assignments" when he in fact turned in all required assignments for his classes completed appropriately. Moreover Plaintiff was 'kicked off' of his level rep position within the Orvis School of Nursing for fabricated and false reasons.

60. On February 21st, 2013, during 'Front Loading' Plaintiff was subjected to a 'Learning Contract' by Salli J. Vannucci his NURS 318: 'Clinical Class' professor and was coerced into signing this 'Learning Contract' by Professor Salli Vannucci and Kim Baxter by being coached, guided, coerced, and threatened that he would not be allowed into his NURS 318: 'Clinical Class' and subsequently failed if he did not sign the contract  Plaintiff made it clear at the meeting and through several e-mail communications that the contract was not agreeable. The 'Learning Contract' is simply a tool used maliciously and wantonly to cause unnecessary stress and to dismiss the Plaintiff. This again demonstrates the lack of regard for policy, arbitrary decision making, and irrational basis for dismissal of the Plaintiff's continued progress in the Orvis School of Nursing program at UNR. This also shows the lack of regard of the faculty at the Orvis School of Nursing to reach the vision and mission statements provided the Orvis School of Nursing Handbook 2012.

61. All of the governing documents including the NSHE Handbook, University of Nevada, Reno Administrative Manual, Orvis School of Nursing Handbook 2012, Orvis School of Nursing Bylaws, Syllabus, pertinent grading documents do not have any provisions.

procedures nor do they even mention anything regarding 'Learning Contracts'. 'Learning

Contracts' are illusionary and utilized by the Orvis School of Nursing to dismiss students. They

are unauthorized nor is there written policy about 'Learning Contracts'. 'Learning Contracts'

have no academic value. Not only is there no policy on 'Learning Contracts' in relevant

governing documents: the Orvis School of Nursing Handbook 2012, NSHE Code, NRS 632,

NAC 632, NRS 396 or otherwise regarding how to construct 'Learning Contracts'; who is to be

involved in the construction of 'Learning Contracts', a standardized method for disciplinary

measures for violation of 'Learning Contracts', a grade value for the contract, nor criteria for

when it is appropriate to place a student on a 'Learning Contract.' 'Learning Contracts' can be

worth 100% of your grade in any given class or 0%. There is no policy

62. On March 14th, 2013 Plaintiff received his midterm evaluation which he was told he

was doing a "good job", to "keep up the good work", and "nobody receives all 'A's' on a

Midterm Evaluation" by his NURS 318: 'Clinical Class' instructor Salli J. Vannucci  Plaintiff

received mostly 'B' grades in his Midterm evaluation.

63. Plaintiff was not succinctly told of any 'academic short comings' after March 14th,

2013 through May 3rd, 2013 where 90% of the overall class grade is weighted.

64. Plaintiff was promoted from taking care of one patient to taking care of two patients,

and he completed all assignments.

**F. Plaintiff's Dismissal**

65. On May 3rd, 2013 Defendant Salli J. Vannucci with the Orvis School of Nursing held

a meeting with Plaintiff about his final grade for NURS 318: 'Clinical Class'. He was told that he

was failing and cannot continue in the Orvis School of Nursing program because of one

competency, competency #10, in one of his classes NURS 318 'Clinical Evaluation Tool'.

15

Plaintiff's 'Clinical Evaluation Tool' was not discussed with the Plaintiff and Plaintiff did not receive a reviewable 'Clinical Evaluation Tool' on May 3rd, 2013.

66. Plaintiff earned a 68% on his 'Clinical Evaluation Tool' regarding his NURS 318: 'Clinical Class'.

67. Plaintiff earned the full 10% for his 'ATI Tutorials' regarding his NURS 318: 'Clinical Class'.

68. Plaintiff earned a total of 78% in his NURS 318: 'Clinical Class'. The total is calculated by adding the 'Clinical Evaluation Tool' score of 68% with the ATI tutorial score of 10% which is a C+ according to the UNR grading scale, and is considered a passing grade

69. Plaintiff's 78% score and subsequent failure in his NURS 318. 'Clinical Class' creates a discrepancy in Plaintiff's dismissal for which Defendant has an obligation to design and employ a holistic as well as appropriate policy to address student grievance and dismissals from the Orvis School of Nursing professional nursing degree program (NAC 632.680(3, 4)); ¶65 – 71. The Orvis School of Nursing does not have policy regarding student dismissals in it's Orvis School of Nursing Handbook 2012 their primary document regarding their duly accepted students pertinent to Plaintiff's time at the Orvis School of Nursing.

70. Defendant docs have language in their UNR Administrative Manual which purports they will develop and enforce policy to protect students, such as Plaintiff, from improper and arbitrary grading practices. These are never realized in any Orvis School of Nursing grading practices.

71. Plaintiff received an 'A' grade in his NURS 301L: 'Assessment Lab' class, an 'A-' grade in his NURS 331: 'Pathophysiology' class, a 'B+' grade in his NURS 317: 'Care of the Individuals and Families' class, a 'B+' grade in his NURS 301: 'Assessment Theory' class. This

is to say he received an 'A', 'A-', 'B+', and a 'B+' in his classes, other than NURS 318·
'Clinical Class' for the Orvis School of Nursing program.

### G. Plaintiff's Attempts to Stay in the Orvis School of Nursing Program

72. On May 6th. 2013 at 10.36AM Plaintiff sent a second email to Salli J Vannucci about reconsideration for his final grade. At 2:16PM after Plaintiff's reconsideration email he received his 'Clinical Evaluation Tool' via email on the University of Nevada, Reno's WEBCampus system which had highlighted several comments which were not mentioned during Plaintiff's meeting. It also contained many errors and inaccuracies which were not discussed or addressed. These were likely purposeful falsehoods to justify failing the Plaintiff in other words the statements on Plaintiff's 'Clinical Evaluation Tool' are completely false. There is no rational basis for Plaintiff's grade or dismissal. The meeting was meaningless.

73. On May 15th. 2013 Plaintiff met with Salli J. Vannucci and Patsy Ruchala, the Director of the Orvis School of Nursing program, regarding Plaintiff's grade in NURS 318: 'Clinical Class' in the context of the University of Nevada, Reno Manual §3,510 or the 'Grade Appeal' process.

74. On June 3rd, 2013 the Defendant convened a 'Grade Appeal Committee' and the proceeding involved Salli J. Vannuci restricting and/or deleting information and pertinent materials regarding Plaintiff's activities in NURS 318: 'Clinical Class' on WEBCampus, which makes his dismissal lacking an adequate foundation of fact, lacking adequate evidences. is of immoral nature, was unreasonable as well as irrational and violated his rights. In addition the formation of the committee itself was conducted in an unfair, bias, and rash manner.

75. The 'Grade Appeal Committee' did not inquire into any of the materials presented by Plaintiff when they had ten days to request materials regarding these matters. The 'Grade

Appeal' process UNR Admin. Manual §3,510 does not allow for legal representation nor does it allow for appeals from it's decision which was made abundantly clear to Plaintiff.

76. The 'Grade Appeal' process found in the UNR Administrative Manual §3,510 does not address Plaintiff's progress in the Orvis School of Nursing program and allows for only three contests to a grade in a singular class. No process exists nor was there one employed the Orvis School of Nursing with the University of Nevada, Reno with the Nevada System of Higher Education. (*See* ¶24).

77. On June 11th, 2013 Plaintiff contacted the Dean of the Orvis School of Nursing and the Vice President of the Department of Health Sciences, Thomas Schwenk, about his dismissal

78. On June 12th, 2013 Plaintiff contacted the Dean of the Orvis School of Nursing and the Vice President of the Department of Health Sciences, Thomas Schwenk, about his dismissal for the second time and received an email reply within hours stating he did a holistic review.

79. Plaintiff requested a meeting with the Dean of the Orvis School of Nursing and was not granted one.

80. On June 14th, 2013 Plaintiff contacted the Vice Provost of Undergraduate Education, Joe Cline, about his dismissal from the Orvis School of Nursing with a reply stating there is no appeals process to the 'Grade Appeal' process the University of Nevada, Reno employs.

81. On June 17th, 2013 Plaintiff contacted the Vice Provost of Undergraduate Education, Joe Cline, about his dismissal from the Orvis School of Nursing with a reply stating there is no appeals process to the 'Grade Appeal' process the University of Nevada, Reno employs. The Vice Provost of Undergraduate Affair took no action nor did a review of Plaintiff's dismissal.

82. On June 19th, 2013 Plaintiff contacted the Vice Provost of Undergraduate Education, Joe Cline, about his dismissal from the Orvis School of Nursing with a third reply stating there is

no appeals process to the 'Grade Appeal' process the University of Nevada, Reno employs.

83. Plaintiff requested a meeting with the Joe Cline and was not granted one.

84. Plaintiff experienced a complete violation of his rights at the Orvis School of Nursing at the University of Nevada, Reno and his experience there was a complete aberration.

85. In the year 2014 Plaintiff continues to suffer harassment, discrimination, and the like as the Orvis School of Nursing professors are present and perform their clinical classes at Renown Hospital where Plaintiff was working as a Certified Nursing Assistant. The professors coerce, persuade and manipulate the nurse managers and nurse supervisors to continue the pattern of harassment he experienced while at the Orvis School of Nursing. These actions are, as it is interpreted by Plaintiff Pro Se, meant to discourage Plaintiff from wanting to go into the field of nursing. The majority of the nurses at Renown are former students from the Orvis School of Nursing  This includes Plaintiff's managers and supervisors. Collectively it has been Plaintiff's experience that the field of healthcare in Reno, NV area is extremely hostile particularly towards men in nursing. Currently Plaintiff is investigating these matters, Equal Employment & Occupations Commission (No. 34B-2015-00212).

## FIRST CLAIM FOR RELIEF

### DUE PROCESS

86  Plaintiff incorporates by reference all the facts and allegations of the above paragraphs of this Complaint as though fully set forth at this point:

87.  Plaintiff was denied his due process rights under the Fourteenth Amendment to the United States Constitution by each of the individual and collective Defendants through their direct actions, indirect actions as well as their indifference which caused the aforementioned violations. It is each independent violation and the intertwined set of acts, omissions, careless

19

and malicious conduct by the Defendant which violates Plaintiff's Due Process Fourteenth Amendment rights.

88. Absent from the processes utilized by the University of Nevada, Reno its agents, employees and administration was the ability of the Plaintiff to respond to the dismissal charges.

89. Due process was absent from Plaintiff's dismissal and grievance from the Orvis School of Nursing program. Plaintiff's rights were circumvented and excavated.

90. Defendant's breaches have caused damages to Plaintiff's liberties and interests in the excess of $75,000 and violated his rights.

## SECOND CLAIM FOR RELIEF

### TITLE IX VIOLATION (20 USC §1681 et seq.)

91. Plaintiff incorporates by reference all the facts and allegations of the above paragraphs of this Complaint as though fully set forth at this point and further alleges:

92. The University of Nevada, Reno within the Nevada System of Higher Education is an institution of higher that offers the professional degree program for education and training nurses the Orvis School of Nursing and is a recipient of Federal Funding. (See ¶29 - 34; 34 CFR §100(Appendix A); 34 CFR §106.2(g)(1)(ii); Federal Register.

93. Defendant violated Title IX, 20 USC §1681 et seq. Plaintiff is part of a protected class and was dismissed where he was highly competent, eligible, and able to obtain his education as a nurse at the Orvis School of Nursing. See ¶29 – 34, See also McDonnell Douglas Corp. V Green 411 US 792, at 802 S.Ct (1973)

94 Plaintiff was dismissed and not denied 'Readmission' into the University of Nevada, Reno's Orvis School of Nursing for the fraudulent, false, misrepresentative, and irrational reasons stated in grading materials, email communications, and other documents where the true

reason and motivations being discrimination against him because he is a male  Each of the individuals and collective Defendants through their direct actions, indirect actions as well as their indifference has resulted in Plaintiff's dismissal. It is each independent violation and the intertwined set of acts, omissions, willfulness, and careless conduct by the Defendant which violates Plaintiff's rights and discriminates against him resulting in disparate impact, disparate treatment, and gender classification. *See* ¶29 – 34.

95.   UNR discourages the pursuit of and denies Plaintiff form his education by violating Title IX, 20 USC §1681 et seq. *See* ¶29 – 34.

96.   Plaintiff consulted several people including Carol A. Millie, Dean of the Orvis School of Nursing as well as VP of the Health Sciences Thomas Schwenk, and the Vice Provost of Undergraduate Education Joe Cline with no referral to any Title IX counselor or coordinator. UNR remains indifferent towards Title IX compliance and discrimination in their nursing program towards males.

97.   These omissions by the University of Nevada, Reno and the Nevada System of Higher Education resulted in the damages to Plaintiff.

**THIRD CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

98.   Plaintiff incorporates by reference all the facts and allegations of the above paragraphs of this Complaint as though fully set forth at this point and further alleges:

99.   "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005): *See Corso v Creighton University*, 731 F. 2d 529, at 531 (8th Cir. 1984) ("The relationship between a university and a student is contractual in nature." citing *Williams v*

*Howard University*, 528 F.2d 658, at 660, 661 (D C.Cir.) *cert denied*, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 123 (1976)) *See* ¶48 – 64 (Plaintiff's application, acceptance, and performance.)

100. Plaintiff was offered a position at the Orvis School of Nursing for the Spring 2013 semester at the University of Nevada, Reno within the Nevada System of Higher Education, which he was subsequently summoned to attend an orientation on December 12th, 2012. Plaintiff accepted the offer and accepted the terms, bylaws, handbooks, circulars, Nevada Administrative Codes, Nevada Revised Statutes, policies, regulations, and the like as in a mutual assent to perform duties in congruence with the Orvis School of Nursing's mission and value statements. The Orvis School of Nursing has graduated their cohorts in their entirety every year within the last ten years.

101. Terms and conditions for graduation of Plaintiff contained are those offered by publications of college at time of enrollment, (*See* Part B 'Nature of the Case and Factual Allegation'; not an exhaustive list), and as such, they have the characteristics of a contract between the parties. The rights and obligations of the parties, as contained in the university's bulletins, especially the Orvis School of Nursing Handbook, the University of Nevada, Reno Manual and the Nevada System of Higher Education Handbook are the primary sources of the terms governing the contractual relationship between Plaintiff and Defendant.

102. Defendants breached this contract and the intentions of the terms in violation of his rights (*See* Part B 'Nature of the Case and Factual Allegations'; not an exhaustive list). Defendants did not follow the terms and conditions governing the Orvis school of Nursing program. Compliance with these terms and conditions are the only consideration provided to the Plaintiff and the University of Nevada, Reno students in exchange for their commitment to the program as well as their payment of tuition and fees. Absent these terms and conditions, the

obligation of the Orvis School of Nursing to perform its side of the educational bargain would be optional and illusionary.

103. The Orvis School of Nursing was founded in the year 1956 and conducts itself with the intention to teach and train nurses. The Orvis School of Nursing, the professors, Deans, Directors, and Vice Provosts failed to perform consistently with these intentions in the Plaintiff's case.

104 The Defendant participated in acts, omission of acts, willful omission of acts, and a breach of the contractual terms established in Nevada Revised Statue, Nevada Administrative Code, and relevant texts such as NSHE Handbook, UNR bylaws, Orvis School of Nursing Bylaws, and the Orvis School of Nursing Handbook 2012. The Defendant acted in contradiction to contractual terms and conditions. As a direct and proximate result of their acts, carelessness, recklessness, wanton and willfully so by the Defendant the Plaintiff suffered a complete destruction of his interests, which has resulted in a loss of experience in nursing and healthcare, loss of future earnings, loss of earning capacity, and a loss of lifetime earning capacity as well as a destruction of professional relationships, companionship, society, and support.

105. The time of formation of the contract it is reasonable foreseeable to both parties that a breach of these provisions could result in damages, Plaintiff is entitled to recover damages for the loss of enjoyment of life, undue oppression, and damage in in sums to be proved at trial as a result of the breach of contract.

106. Defendant's breaches have caused and excavation for Plaintiff and those similarly situated.

107. Defendant's breaches have caused damages to Plaintiff's liberties and interests in the excess of $75,000 and violated his rights.

23

## FOURTH CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALINGS

108.   Plaintiff incorporates by reference all the facts and allegations of the above paragraphs of this Complaint as though fully set forth at this point and further alleges:

109.   "A fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another." *Powers v  United Servs  Auto  Ass'n*, 114 Nev. 690, 979 P.2d 1286 (1999). Defendant possesses combination of specialized knowledge, skills, facilities including simulation technology, and contracts with Renown and Saint Mary's Hospitals which the Defendant possesses and the Plaintiff cannot obtain on his own. The Plaintiff's was in a position to benefit from this specialized combination of knowledge, expertise and training which are directly applicable to the Plaintiff's undertakings at OSN with UNR. The relationship between the professor's at UNR at OSN adopt a special type of trust from their students and it is expected that they will perform their duties, including grading, with fidelity, good faith, and the confidence of the student. The professors take an oath pursuant NRS 396.270:

> " . before [professors] enter upon the duties of their respective offices, take and subscribe to the following oath I,    . .   . ., do solemnly [solemnly] swear (or affirm) that I will support, protect and defend the constitution and government of the United States, and the constitution and government of the State of Nevada, against all enemies. whether domestic or foreign, and that I will bear true faith, allegiance and loyalty to the same, any ordinance, resolution or law of any state notwithstanding, and that I will well and faithfully perform all the duties of the office of    .         , on which I am about to enter, (if an oath) so help me God, (if an affirmation) under the pains and penalties of perjury." Nev. Const  Article 15§2 (giving rise to a duty)

Restatement (Second) of Torts §314A(cmt a, b); "An additional relation giving rise to a similar duty is that of an employer to his employee. (*See* § 314B.) As to the duty to protect the employee against the conduct of third persons. *See* Restatement of Agency, Second, Chapter 14... [cmt b] ...duties stated in this Section arise out of special relations between the parties,

which create a special responsibility, and take the case out of the general rule. The relations

listed are not intended to be exclusive. ." (*See* illustrations therein.)

110.     Plaintiff, the principal, completely reliant on Defendant's, the fiduciary,

combination of specialized knowledge, specialized skills, policies, enforcement of policies.

teaching techniques, grading techniques, and facilities including simulation technology as well as

their contracts to teach clinical with Renown Hospital and Saint Mary's Hospitals (NAC

632.685(1)(c) requiring clinical time) Plaintiff lends his confidence in his professors in grading

with good faith. and not contradictory to grading material instructions or syllabus policies and

intent  *See George v  Morton* 2007 WL 4631263 citing *Giles v  Gen  Motors Acceptance Corp.,*

494 F.3d 865, 880 and 881 (9th Cir  2007) ("Under Nevada law, "[a] fiduciary relationship is

deemed to exist when one party is bound to act for the benefit of **\*881** the other party. Such a

relationship imposes a duty of utmost good faith" *citing Hoopes v  Hammargren*, 102 Nev. 425,

725 P 2d 238, 242 (1986) (also recognizing that "special relationships" give rise to a fiduciary

duty to disclose at ¶112): *See also Burgos v. Hopkins,* 14 F. 3d 787 (2nd Cir. 1994) ("Under

Nevada law, breach of the implied covenant of good faith and fair dealing can give rise to a tort

when a special relationship exists between the parties to the contract, such as the relationship

between an insurer and an insured." (external citation omitted): *See also* Seavey, Warren

"Dismissal of Students: 'Due Process'" 70 Harv  L. Rev. 1406, EN 3 (1957).

111.     Required teaching documents were deficient and purposefully as well as

maliciously omit required and recommended policy provisions required in the UNR

Administrative Manual. This has paved a road for arbitrary decision making, is intentionally

ignorant to policy, and creates an avenue in which to dismiss Plaintiff arbitrarily and in bad faith.

Defendant wantonly, arbitrarily, and capriciously dismissed the Plaintiff.

112.    Plaintiff's professor failed to inform Plaintiff of his academic shortcomings where he was left at a disadvantage. There was also a lack of scrutiny as well as lack of attention to instructions on the 'Clinical Evaluation Tool' set by the Defendant.

113. The comments on Plaintiff's 'Clinical Evaluation Tool' were made to accomplish the goal of failing and dismissing the Plaintiff from the Orvis School of Nursing program at the University of Nevada, Reno within the Nevada System of Higher Education.

114 The Defendant willfully and maliciously disregarded policy, and reported completely inaccurate dates of tardiness as it is stated on Plaintiff's Clinical Evaluation Tool.

115. The Defendant lacks policy regarding tardiness, and has no record keeping system for tardiness's for the Plaintiff. The Defendant has no idea who was on time or otherwise. No tardiness/lateness policy exists in the Nevada System of Higher Education, University of Nevada, Reno, or the Orvis School of Nursing collective policies.

116. On May 3rd 2013, the Plaintiff met with professor of NURS 318 about his Clinical Evaluation Tool and was told that he would receive a failing grade for the reason that he failed competency number ten on the Clinical Evaluation Tool. The professor did not review or discuss the Clinical Evaluation Tool with the Plaintiff. nor did the professor conduct the meeting in an open and honest manner to discuss his grade.

117. On May 3rd, 2013 Plaintiff was instructed to speak to the second degree advisor Mary Anne Lambert or Kim Baxter. Kim Baxter recommended the Plaintiff to Mary Anne Lambert whom gave the Plaintiff several options as stated in an email none of which included the readmission procedure in the Orvis School of Nursing Handbook 2012.

118. On June 4th, 2013 the readmission was denied to the Plaintiff according to Orvis School of Nursing Policy. Plaintiff's rights were excavated and denied. (*See* ¶100, 101).

119. Defendant's breaches have caused damages to Plaintiff's liberties and interests in the excess of $75,000 and violated his rights.

## FIFTH CLAIM FOR RELIEF

### FRAUD

120. Plaintiff incorporates, by reference the above paragraphs, supra, as though fully set forth at this point·

121. Pleading frauds, mistakes, or conditions of the mind are governed by FRCP 9(b). "Rule 9(b) is intended to ensure that each defendant is provided with reasonable detail concerning the nature of his particular involvement in the alleged fraud *** [and] cannot be based 'on information and belief'" *Equitable Life Assur. Soc. of U S v. Alexander Grant & Co.,* 627 F.Supp. 1023, at 1029 (1985). Furthermore, "… 'has generally been held to require specification of the time, place and contents of the misrepresentations, the identities of the persons who made the misrepresentations, and the manner in which the misrepresentations were communicated to the plaintiff'… [and has the] primary purpose of informing defendants of the nature of the claimed wrong so that they have an opportunity to make an effective response." *Hengel. Inc v. Hot 'N Now, Inc ,* 825 F.Supp. 1311, at 1319 (1993).

122. The staff at the Orvis School of Nursing, chiefly Patsy Ruchala, working for the Orvis School of Nursing has omitted and changed the Orvis School of Nursing 2012 reviewed in December 22nd, 2012 with the 'Professional Ethics and Academics Policy' pages 7 – 16, 'Communication of Student Concerns' page 53, and 'Student Uniform Policy' page 46 changed on or around July 7th, 2013 after Spring 2013 and after dismissal of Plaintiff on June 4th, 2013. These changes were communicated to Plaintiff in a declaration made by Kim Baxter on January 29th, 2013 while the University of Nevada, Reno and the Orvis School of Nursing adamantly and

consistently asserted that the true version of the Orvis School of Nursing Handbook applicable to Plaintiff was the one created or around July 7th, 2013 and named the Orvis School of Nursing Handbook 2014 despite knowing otherwise. To assert that the OSN Handbook 2014 was the true handbook governing Plaintiff's time at the Orvis School of Nursing is a completely false representation of the policies and circumstances. This assertion is also knowingly made false by the above defendants as they are the persons who posted on their website that they were in fact revising the Orvis School of Nursing Handbook 2012. Plaintiff and the Court rely on this document to obtain the truth, and the assertion made by the above are a false and illusionary premise created to disadvantage Plaintiff in his pursuit for justice. These changes are also made to create an excavation in all OSN students' due process rights. Plaintiff relies on the Orvis School of Nursing Handbook 2012 and all of it's unaltered content in it's entirety.

123. Defendant's breaches have caused damages to Plaintiff's liberties and interests in the excess of $75,000 and violated his rights.

## SIXTH CLAIM FOR RELIEF

## CONSPIRACY AND CONCERT OF ACTION

124. Plaintiff incorporates, by reference the above paragraphs, supra. as though fully set forth at this point:

125. The Defendants conducted themselves in a manner to see the dismissal of the Plaintiff. It was agreed or understood that the purpose of meetings and agreements as described in all previous claims, *supra*, that both their purpose and their methods of achieving this purpose were unlawful and would result in Plaintiff's dismissal from Orvis School of Nursing program and would cause associated damages and destroy his liberties and interests. They agreed and understood that each would act in concert, aid and abet, or conspire with the others to achieve

28

this purpose. This is evidentiary in a broad context of the conduct of the 'Grade Appeal

Committee' and faculty. Specifically, in several meetings between 1) the Plaintiff and the

Defendant 2) amongst administrative faculty and academic faculty 3) unknown students and

academic faculty 4) as well as before meetings between unknown persons and persons consisting

of the Grade Appeal Committee 5) and finally between the Grade Appeal Committee and the

Plaintiff's professor in his NURS 318:'Clinical Class', Salli J. Vannucci.

126. The professors at the Orvis School of Nursing all occupy the newly constructed

Pennington Health Sciences building 3rd floor. Their offices are adjacent and very close in

proximity to one another. The use of email or phone is not required to communicate with other

Orvis School of Nursing professors or students.

127. A possible conflict of interest existed at with Patsy Ruchala and Mary Anne Lambert

the second degree advisor and the Nevada State Board of Nursing, which contributed to the

failure of the Defendant to supervise its professor's as and resulted in the excavations in which

the Plaintiff was and is subjected to.

128. Defendant's breaches have caused damages to Plaintiff's liberties and interests in the

excess of $75,000 and violated his rights.

## WAIVER OF RIGHT FOR TRIAL BY JURY

Plaintiff waives his right for trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Judgment in favor of Plaintiff and against Defendant for damages in such amounts as

   may be proven at trial;

B. Compensation for loss of enjoyment of life as well as special and general damages;

C. Reasonable costs of suit and attorney's fees;

D. Interest at the statutory rate;

E. Punitive or exemplary damages against Defendant.

Dated this 16th of July, 2015.

Shaun Robinson in Pro Per
6319 Blue Lakes Ct.
Reno, NV 89523

## CERTIFICATE OF SERVICE

Pursuant FRCP the undersigned hereby certifies that on July 16th of 2015 that served
PLAINTIFF'S ORIGINAL COMPLAINT **via US mail** service of a copy of the **same to the
following:**

Chancellor Dan Klaich
University of Nevada, Reno with the
Nevada System of Higher Education
2601 Enterprise Rd.
Reno, NV 89512

Melissa P. Barnard Esq. (UNR General Counsel)
1664 N. Virginia St. MS 0550
Reno, NV 89557-0550

Salli J. Vannucci
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

Kim Baxter
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

Patsy Ruchala
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

George Rodway
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

Dr. Nora Constantino
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

Cathy Butler
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

Deborah Arnow
Pennington Health Sciences Building
1664 N. Virginia St.
Reno, NV 89557

Chapel McKinnon
Renown Hospital, Sierra ICU
1155 Mill St.
Reno, NV 89502

Dated this ___ of July, 2015.

Shaun Robinson in Pro Per
6319 Blue Lakes Ct.
Reno, NV 89523